UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TAUREAN O'KEITH JACKSON,

                  Plaintiff,

    v.

ANNIE STEWART, *et al.*

                  Defendants.

No. 22-CV-7476 (KMK)

OPINION & ORDER

---

Appearances:

Taurean O'Keith Jackson
Marianna, FL
*Pro Se Plaintiff*

Adam M. Gitlin, Esq.
U.S. Attorney's Office, S.D.N.Y.
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

    Taurean O'Keith Jackson ("Jackson" or "Plaintiff"), proceeding pro se, brings this Action against the United States (the "Government") and corrections officer Annie Stewart ("Stewart") (collectively, the "Defendants"), alleging a negligence claim against the Government pursuant to the Federal Tort Claims Act ("FTCA") and constitutional claims against Stewart under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for violations of his Eighth Amendment rights. (*See generally* Second Amended Compl. ("SAC") (Dkt. No. 67).) Before the Court is Defendants' Motion to Dismiss (the "Motion") Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Not. of Mot. (Dkt. No. 76).) For the following reasons, the Motion is granted.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's SAC, which is assumed to be true for the purpose of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

During the period relevant to the claims in the SAC, Plaintiff was an inmate at FCI Otisville, employed in the medical department. (*See* SAC 3.) Plaintiff contends that beginning in November 2021, Stewart subjected him to verbal and physical sexual abuse. (*See generally id.*)

Plaintiff alleges that on December 21, 2021, Stewart entered the orderly supply closet where he was working, sat in a chair across from him, and "requested to see his penis." (*See id.* 4.) Plaintiff informed Stewart that he was not going to do so, and then she lowered her "pants for about ten (10) seconds." (*See id.*) Plaintiff then alleges that then she walked back up to Plaintiff "grabbed his genitals without his consent" and stated "'well at least I know you enjoyed it.'" (*See id.*)

On December 28, 2021, Plaintiff alleges that Stewart went into the orderly supply closet to find Plaintiff. (*See id.* 5.) She told him he "smelled good" and "fondled [Plaintiff's] genitals," telling him "[i]t would only take two minutes," which Plaintiff took to refer to sexual intercourse. (*See id.*) Plaintiff alleges he jumped up and opened the door. (*See id.* 56.) Stewart and Plaintiff heard another corrections officer nearby, and Stewart "tip to[ed] quietly behind [the corrections officer]" to leave the supply closet without being seen. (*See id.*)

Plaintiff alleges that later that day, Stewart devised a plan for her and Plaintiff to have sex on the morning of December 30, 2021. (*See id.*) Plaintiff claims that he did not follow through

with the plan, which made Stewart angry, leading her to accuse Plaintiff of "setting her up." (*See id*. 7.) Fearful that Stewart might retaliate against him, Plaintiff went to Stewart's office at approximately 8:10 AM to calm her down. (*See id.* 7.) Plaintiff apologized to Stewart and requested that she not have him fired. (*See id*.) In response, Stewart instructed Plaintiff to leave and come back after another colleague left her office. (*See id*.) Plaintiff alleges that when he later returned to Stewart's office, Stewart grabbed his genitals, masturbated in front of him, and forced him to masturbate in front of her. (*See id*. 8–9.) Later that morning, Plaintiff found Stewart and explained to her that he "felt raped" and that "everything she was doing" had to stop. (*See id.* 9 (internal quotations omitted).) Stewart conveyed to Plaintiff that she believed that Plaintiff was going to report her. (*See id.* 10.) Plaintiff worked in the medical department that day until 11:00 AM and then returned to his housing unit. (*See id*.)

Upon returning to his housing unit, Plaintiff went to the unit's computer room to send an email to the Office of Inspector General ("OIG") hotline. (*See id*. 10.) However, Plaintiff states that there were too many inmates in the computer room, so he left. (*See id*.) Later that day, two lieutenants came to Plaintiff's cell, placed him in handcuffs, and escorted him to the Special Housing Unit ("SHU"). (*See id*. 10–11.) The lieutenants also read to the Plaintiff an incident report, which stated that Plaintiff had allegedly sexually assaulted Stewart at 8:05 AM that day. (*See id*.) While in the SHU, Plaintiff submitted two "cop outs" claiming that he had been "sexually abused." (*See id*.) Plaintiff claims both were discarded. (*See id*.) Plaintiff also received a medical assessment, where he claims he said that he had been sexually abused by Stewart, but that the corrections officer who was supervising him "quickly interjected" and said "ssssh [sic] . . . [d]on't say nothing!" (*See id*.) Plaintiff also claims to have told another corrections officer, who told him to file a cop out. (*See id*.) On January 5, 2022, Plaintiff was

3

relocated to FCI Allenwood, where he claims to have spent 18 months in segregation, and where he claims his personal belongings were destroyed by another corrections officer. (*See id*.at 12.)

B. Procedural Background

On August 30, 2022, Plaintiff initiated the instant Action. (*See* Compl. (Dkt. No. 1).) Plaintiff filed an Amended Complaint on November 17, 2022. (*See* Amended Compl. (Dkt. No. 10).) On August 5, 2024, the Court issued an Opinion (the "2024 Opinion") dismissing Plaintiff's claims without prejudice. (*See* 2024 Op. (Dkt. No. 55).) Plaintiff filed a Second Amended Complaint on February 25, 2025. (*See* SAC.)

On February 28, 2025, Defendants filed a letter requesting that the Court dismiss Plaintiff's SAC for the reasons articulated in its 2024 Opinion, or else set a briefing schedule for Defendants to file a renewed motion to dismiss. (*See* Dkt. No. 68.) The Court set a briefing schedule, (*see* Dkt. No. 69), and Defendants filed their Motion to Dismiss and related documentation on April 14, 2025, (*see* Not. of Mot.; Defs. Mem. Of Law in Supp. Mot. to Dismiss ("Defs. Mem.") (Dkt. No. 77); Not. of Local Rule 12.1 ("12.1 Not.") (Dkt. No. 78); Decl. of John Hayes ("Hayes Decl.") (Dkt. No. 79)).[1] Plaintiff failed to file his Opposition, (*see generally* Dkt.), and on May 29, 2025, the Court deemed the Motion fully submitted.

---

[1] Defendants requested that, in the alternative, the Court grant summary judgment in their favor, (*see* Defs. Mem. 8), and also filed a Statement of Undisputed Facts pursuant to Local Rule 56.1, (*see* Dkt. No. 80). This Court's Individual Rules require that parties request a pre-motion conference and submit a letter detailing the arguments that form the basis of their motion before the Court will permit them to make a motion. *See* Judge Kenneth M. Karas Individual Rules of Practice § II.A. Defendants failed to comply with this requirement, and therefore the Court will not consider their Motion for Summary Judgment.

II. Discussion

A. Standard of Review

    1. 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (citation omitted)).

The Second Circuit has explained that a challenge to subject matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. Health Port Techs.*, LLC, 822 F.3d 47, 56–57 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden," *id.* at 56 (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)), and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue," *id.* (alterations adopted) (quoting *Amidax Trading Grp.*, 671 F.3d at 145). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the

pleadings if the evidence offered by the defendant is immaterial.  *See Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017).  "If the extrinsic evidence presented by the defendant is material and controverted, the . . . [C]ourt will need to make findings of fact in aid of its decision as to standing."  *Carter*, 822 F.3d at 57.

    2.  12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a plaintiff's claim based on "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  At the motion to dismiss stage, a court must "draw all reasonable inferences in the [plaintiff's] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'"  *United States v. Medtronic, Inc.*, No. 18-CV-1628, 2024 WL 4165522, at *3 (S.D.N.Y. Sept. 12, 2024) (quoting *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)).

To survive a motion to dismiss, the Supreme Court has held that a complaint "does not need detailed factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  However, "a [plaintiff's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

6

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id*. at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id*. at 570. Certainly, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id*.; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))). Where, as here, a complaint was filed pro se, it must be construed liberally with "'special solicitude' and interpreted to raise the strongest claims that it suggests." *Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 561 (S.D.N.Y.) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)), *aff'd*, 657 F. App'x 949 (Fed. Cir. 2016).

B. Analysis

    1. *Bivens*

In the SAC, Plaintiff appears to re-assert his *Bivens* claim. (*See* SAC 17.) As the Court noted in its 2024 Opinion, *Jackson v. Stewart* ("*Jackson I*"), No. 22-CV-7476, 2024 WL 3677246 (S.D.N.Y. Aug. 5, 2024), Plaintiff's claim is not cognizable under *Bivens* "because [his claim] implicates a new context for the application of the *Bivens* remedy and special considerations counsel against its expansion," *id*. at *6 n.5 (citing *Edwards v. Gizzi*, 107 F.4th 81, 81 (2d Cir. 2024)); *see also Herrera v. United States*, No. 20-CV-10206, 2022 WL 902090, at *8 (S.D.N.Y. Mar. 27, 2022) (declining to extend *Bivens* remedy to the plaintiff's claims

7

where the court found that the BOP employees' failure to protect inmates from repeated sexual abuse by another BOP colleague or subordinate presented a substantially different context from that in *Carlson [v. Green*, 446 U.S. 14 (1980)] and special factors counseled hesitation); *Morgan v. Shivers*, No. 14-CV-7921, 2018 WL 618451, at *5 (S.D.N.Y. Jan. 29, 2018) (holding that a prisoner's Fourth Amendment claim of bodily privacy presented a new context from *Bivens*, which, unlike the instant case, involved a Fourth Amendment warrantless entry into plaintiff's home, and special considerations counseled against extending the *Bivens* remedy); *Schulte v. Bureau of Prisons*, No. 20-CV-2795, 2022 WL 1468017, at *3 (S.D.N.Y. May 10, 2022) (concluding that the plaintiff's First Amendment claim presented a meaningfully different context because the Supreme Court had never held that *Bivens* extended to First Amendment claims and that it implicated special factors counseling against the extension of *Bivens*). For that reason, the Court once again dismisses Plaintiff's *Bivens* claim.

    2. <u>FTCA</u>

Defendants also argue that, inter alia, the Court lacks subject matter jurisdiction over the claim because Plaintiff failed to properly exhaust his administrative remedies prior to bringing his Complaint in district court. (*See* Defs. Mem. 14–16.) As before, the Court agrees. *See Jackson I*, 2024 WL 3677246, at *5–6.

In enacting the FTCA, Congress created a "limited waiver by the United States of its sovereign immunity and allow[ed] for a tort suit against the United States under specified circumstances." *Liranzo v. United States*, 690 F.3d 78, 84–85 (2d Cir. 2012) (quoting *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007)); *see also Regnante v. Sec. & Exch. Offs.*, 134 F. Supp. 3d 749, 767 (S.D.N.Y. 2015) (same). An FTCA action "against the United States is the exclusive remedy for a suit for damages for injury resulting from the negligent or wrongful act or

omissions of any employee of the Government while acting within the scope of his office or employment." *Bearam v. Sommer*, No. 12-CV-1858, 2013 WL 5405492, at *8 (S.D.N.Y. Sept. 25, 2013) (internal quotation marks and citation omitted); *see also Finley v. Hersh*, No. 12-CV-162, 2013 WL 3450270, at *7 (D. Vt. July 9, 2013) ("As to [the plaintiff's] tort claims, his exclusive remedy for monetary damages against the United States is under the Federal Tort Claims Act."). When bringing an FTCA claim, plaintiffs are required to first exhaust their administrative remedies. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court.").

The exhaustion requirements of the FTCA are governed by 28 U.S.C. § 2675(a), which mandates that:

> *An action shall not be instituted* upon a claim against the United States for money damages for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have **first** presented the claim to the appropriate Federal agency* and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a) (emphasis added). In *McNeil v. United States*, 508 U.S. 106 (1993), the Supreme Court held that this language requires that an aggrieved individual receive a formal denial from the federal agency prior to *commencing* an action in federal court. *See id*. at 112 ("In its statutory context [28 U.S.C. § 2675(a)], we think the normal interpretation of the word 'institute' is synonymous with the words 'begin' and 'commence.'"). Therefore, courts are required to dismiss claims that are instituted prior to exhaustion, even if they become exhausted during the course of litigation. *See Giddings v. United States*, No. 21-CV-5251, 2023 WL 4492411, at *4 (S.D.N.Y. July 12, 2023) (granting dismissal because the plaintiff failed to "exhaust his administrative remedies *before* filing this suit" (emphasis added)).

9

Furthermore, the FTCA's exhaustion requirement is "jurisdictional and cannot be waived." *Celestine*, 403 F.3d at 82; *see also Bastien v. Samuels*, No. 14-CV-1561, 2015 WL 5008837, at *2 (E.D.N.Y. Aug. 21, 2015) (noting that the Second Circuit has held that exhaustion cannot be waived). "The plaintiff bears the burden of pleading compliance with the FTCA's exhaustion requirement." *Sherman-Amin-Braddox:Bey v. McNeil*, No. 10-CV-5340, 2011 WL 795855, at *2 (E.D.N.Y. Feb. 25, 2011) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.").

Here, the record demonstrates that Plaintiff did not file a Standard Form 95 ("SF-95") form until September 27, 2022. (*See* Hayes Decl., Ex. B ("SF-95") 10 (Dkt. No. 79-2).) Plaintiff's claim was administratively exhausted by February 2023, nearly seven months after the institution of this Action. (*See* Hayes Decl., Ex. C ("Denial Letter") (Dkt. No. 79-3).) That Plaintiff filed his claims in this Court prior to receipt of a formal denial of his claim by an administrative agency means that he has failed to administratively exhaust, and thus that this Court has no jurisdiction. *See Giddings*, 2023 WL 4492411, at *4 ("[A]lthough Plaintiff states that since filing his amended complaint, he has filed an administrative claim, . . . a failure to exhaust ones' administrative remedies cannot be cured after the fact.") (citing *Grancio v. De Vecchio*, 572 F. Supp. 2d 299, 310 (E.D.N.Y. 2008)); *Kelley v. Franklin Cnty. Rehab Ctr., LLC*, No. 21-CV-278, 2022 WL 18542326, at *2 (D. Vt. July 19, 2022) ("The court lacks jurisdiction over FTCA claims that are unexhausted at the commencement of the action—even if these claims are exhausted during the course of litigation."); *Tarafa v. B.O.P. MDC Brooklyn*, No. 07-CV-554, 2007 WL 2120358, at *3 (E.D.N.Y. July 23, 2007) (dismissing a plaintiff's FTCA

claims because "[w]hen [the plaintiff] originally instituted this action, he had not exhausted his FTCA claim," and notwithstanding the fact that "[the plaintiff's] FTCA claim has since been exhausted"). And "[a]lthough it is this [C]ourt's view that dismissing [Plaintiff's] FTCA claim and requiring him to re-file is the ultimate exercise of form over substance, this court must dismiss [Plaintiff's] FTCA claim under the Supreme Court's dictates in *McNeil*." *Tarafa*, 2007 WL 2120358, at *3 (E.D.N.Y. July 23, 2007) (internal quotation marks omitted).

### III. Conclusion

For the foregoing reasons, Plaintiff's claim is dismissed without leave to amend, but without prejudice. *See Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 445 (2d Cir. 2022) ("A dismissal for lack of jurisdiction without leave to amend is not the same thing as a dismissal with prejudice . . . because a dismissal without prejudice, even one denying leave to amend, does not preclude another action on the same claims." (internal citations and quotations omitted)). Nothing about the Court's holding prohibits Plaintiff from re-filing his claim now that he has administratively exhausted and moving for the appointment of pro bono counsel at that time.[2]

The Clerk of Court is respectfully directed to terminate the pending motions (Dkt. Nos. 74, 76), close the case, and mail a copy of this Opinion to Plaintiff.

---

[2] Plaintiff also filed a Motion for the Appointment of Counsel. (*See* Dkt. No. 74.) Because the Court has determined that Plaintiff's claim must be re-filed and thus that he cannot succeed on the merits of the instant Action, the Court denies Plaintiff's Motion. *See Poole v. New York Police Dep't*, No. 15-CV-6033, 2018 WL 11691110, at *2 (E.D.N.Y. Jan. 4, 2018) (denying the plaintiff's motion for counsel where it was "clear that the [p]laintiff [would] not be successful on the merits").

SO ORDERED.

Dated:  September 22, 2025
         White Plains, New York

                                              KENNETH M. KARAS
                                              United States District Judge